UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                                   )
v.                                 )    Criminal Action
                                   )    No. 16-10166-PBS
LUIS RIVERA,                       )
                                   )
          Defendant.               )
_____)

**MEMORANDUM AND ORDER**

July 24, 2017

Saris, C.J.

Luis Rivera, along with eight co-defendants, has been charged with conspiracy to distribute cocaine and cocaine base. Docket No. 59. Rivera has filed two motions to suppress. In the first motion, Rivera seeks to suppress evidence seized from two apartments on the basis that the affidavit in support of the search warrants failed to establish probable cause. Docket No. 216. In the second motion, Rivera[1] seeks to suppress evidence derived from an allegedly unlawful wiretap of his cellphone. Docket No. 218.

Both of Rivera's motions to suppress (Docket Nos. 216, 218) are **DENIED**.

---

[1] The Court allowed motions by Kenneth Burke, Vaughn Lewis, and Mannie Myers to join Rivera's motion to suppress the wiretap evidence. Docket No. 235, 238, 265.

1

**BACKGROUND**

I.  **Title III Wiretap**

The government obtained a Title III wiretap on Luis Rivera's cell phone, Target Telephone (TT) 5, on February 10, 2016. The wiretap application was supported by a February 10, 2016 affidavit by DEA Task Force Agent Paul M. Gallagher that incorporated an October 30, 2015 affidavit by ATF Special Agent Robert J. White.

According to the Gallagher and White affidavits, Rivera was part of the Boylston Street Gang ("BSG"), which distributed narcotics in Boston and Brockton, MA. Edison Tejeda and Antonio Sosa were the suspected leaders of the BSG. Rivera was suspected of supplying BSG members, particularly Tejeda, with drugs for distribution.

II.  **Apartment Searches**

On June 9, 2016, at about 5:00 AM, law enforcement officers simultaneously executed two search warrants: at 25 Columbia St. Apt. 1R in Brockton and 103 Green St. Apt. 1 in Brockton. The warrants were issued on June 8, 2016 based on an affidavit by ATF Task Force Officer Gary Mercurio.

Rivera was present at 103 Green Street at the time of the search. The record does not make clear what evidence was seized from either location.

### III. Procedural History

Rivera was originally indicted on June 8, 2016. Docket No. 1. The superseding indictment was issued on July 13, 2016. Docket No. 59. The superseding indictment charged Luis Rivera and eight co-defendants with conspiracy to distribute cocaine and cocaine base.

On May 8, 2017, Rivera filed two motions to suppress. Docket Nos. 216, 218. The Court heard argument on the motions on June 21, 2017.

## DISCUSSION

### I.   Motion to Suppress Wiretap Evidence (Docket No. 218)

Because Rivera's argument for suppressing evidence from the apartment search relies in part on his wiretap motion, the Court begins with the wiretap motion.

Rivera seeks to suppress all evidence obtained as a result of the wiretap on Target Telephone (TT) 5. Rivera does not contest that TT 5 was his phone. Nor does Rivera contest probable cause for the issuance of the wiretap. Rivera argues only that the affidavits filed in support of the wiretap application failed to meet the Title III necessity requirement because traditional investigative techniques were producing results and there was no reason to believe that they were unlikely to succeed. 18 U.S.C. § 2518(1)(c) (requiring that a Title III warrant application contain "a full and complete

3

statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous").

The Court recently denied a similar motion to suppress evidence obtained from a Title III wiretap. United States v. Wilkins, No. CR 16-10096-PBS, 2017 WL 1731085 (D. Mass. Apr. 27, 2017). As the Court stated in that opinion, the necessity requirement is not overly demanding. The First Circuit "ha[s] interpreted that provision to mean that the statement should demonstrate that the government has made 'a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls.'" United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003) (quoting United States v. Hoffman, 832 F.2d 1299, 1306-07 (1st Cir. 1987)). "[T]he government is not required to show that other investigative methods have been wholly unsuccessful, nor must the government exhaust all other investigative measures before resorting to wiretapping." United States v. Cartagena, 593 F.3d 104, 109 (1st Cir. 2010). In reviewing the government's showing of necessity, the question is whether "the facts set forth in the application were minimally adequate to support the determination that was made." United States v. Rose, 802 F.3d 114, 118 (1st Cir. 2015)

4

(quoting United States v. Yeje-Cabrera, 430 F.3d 1, 7 (1st Cir. 2005)).

Officer Gallagher's affidavit in support of the wiretap application meets the "minimally adequate" standard. Paragraph 11 of Gallagher's affidavit stated the investigative objectives that had not yet been met that justified a wiretap on TT 5: (1) identify Rivera's source of drugs; (2) identify associates of Rivera; (3) gather sufficient evidence to prosecute Rivera and his sources of supply; (4) identify persons supplied with drugs by Rivera; (5) gather sufficient evidence to prosecute persons supplied with drugs by Rivera; and (6) identify locations where Rivera stores drugs, firearms, and proceeds. Gallagher aff. ¶ 11. Gallagher went on to describe the following traditional investigative techniques and their inadequacies: previous wiretaps, id. ¶ 53; physical surveillance, id. ¶¶ 54-56; pole camera and GPS warrant, id. ¶¶ 57-58; confidential sources, id. ¶¶ 59-61; pen registers, trap and trace devices, and toll records, id. ¶ 62; search warrants and seizures, id. ¶¶ 63-65; grand jury subpoenas, id. ¶ 66; interviews of subjects and associates, id. ¶ 67; undercover agents, id. ¶ 68, and trash pulls, id. ¶ 69.

Rivera nonetheless argues that the wiretap was not necessary to identify persons working with Rivera to distribute drugs because there was no evidence that Rivera had any

5

associates. This argument is meritless. Cooperating witnesses identified Rivera as having other persons that worked with him, for example as drug runners, to distribute significant amounts of drugs. Id. ¶¶ 9, 21 n.7, 47.

Rivera also argues that GPS monitoring of his phone plus controlled purchases by cooperating witnesses were sufficient to meet investigative objectives. In particular, Rivera argued at the motion hearing that the wiretap was unnecessary because of the investigators' success with one of their cooperating witnesses, CW-4. CW-4 was a drug customer of Rivera. Two video- and audio-recorded controlled purchases of cocaine that CW-4 made from Rivera helped show probable cause for issuance of the wiretap. Id. ¶ 22-43. But, as the wiretap affidavit explained, CW-4 was only a drug customer of Rivera and could not obtain information about Rivera's sources of supply, the internal operations of Rivera's organization, or other customers of Rivera. Id. ¶ 61.

Finally, Rivera argues that there was no need to identify other customers of Rivera because investigators knew that Rivera was selling to Tejeda. But the investigative objectives included the identification of other buyers, and that was a legitimate investigative objective.

Rivera's motion to suppress evidence from the TT 5 wiretap (Docket No. 218) is **DENIED**.

6

## II. **Apartment Searches (Docket No. 216)**

Rivera argues that the warrant application for the apartment searches failed to establish probable cause for a number of reasons. None of the arguments carry the day for Rivera.

First, Rivera argues that the affidavit in support of the 25 Columbia Street warrant relied on unlawful wiretap interceptions. The Court rejected that argument above.

Second, Rivera argues that the warrant application failed to adequately establish a nexus between Rivera's drug trafficking activity and either apartment. "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched -- the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). With regard to the 'nexus' element, the task of a magistrate in determining whether probable cause exists is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The nexus to both the Green Street and Columbia Street apartments was sufficiently established. First, on an intercepted call to a customer on February 26, 2016, Rivera gave the customer the option of meeting at "Green" or "Columbia." Mercurio aff. ¶ 135. Further evidence tied Rivera's drug trafficking to each of those locations. Rivera was observed conducting drug transactions coming from or going to the Green Street apartment on January 27, February 23, and March 10, 2016. Id. ¶¶ 122, 128–30, 168, 178. Rivera directed buyers to go to the Columbia Street apartment for drug transactions on February 22, February 26, March 8, and May 26, 2016. Id. ¶¶ 133–37. Further, there was probable cause to believe that documentary evidence and drug paraphernalia would be found at those locations. Id. ¶ 189. Given the deference given to the magistrate judge's assessment of probable cause, United States v. Wilder, 526 F.3d 1, 6 (1st Cir. 2008), the nexus to both apartments was easily established.

Finally, Rivera argues that the nexus evidence in the warrant application was stale. But evidence of continuous drug dealing and a nexus to the apartments over multiple-month periods defeats staleness. The last link to Green Street was a controlled buy on March 10, 2016, which was about three months before the warrant affidavit. The last link to Columbia Street was an observation on May 26, 2016, which was about two weeks

before the warrant affidavit. The last documented drug transaction by Rivera was on June 2, 2016, just six days before the warrant affidavit. Mercurio aff. ¶ 38. These time periods are sufficiently close to defeat staleness. See United States v. Tiem Trinh, 665 F.3d 1, 14 (1st Cir. 2011) ("We have repeatedly recognized that drug operations, when sheltered in the darkness of relative obscurity, often germinate over a protracted period of time; thus, information that might otherwise appear stale may remain fresh and timely during the course of the operation's progression."); see also Feliz, 182 F.3d at 87 ("Feliz argues that because the drug transactions described in the affidavit took place approximately three months prior to issuance of the warrant they were 'stale.' But courts have upheld determinations of probable cause in trafficking cases involving similar or even longer periods.").[2] Rivera's motion to suppress evidence from apartment searches (Docket No. 216) is **DENIED**.

---

[2] Rivera also argues that Mercurio relied on an unreliable cooperating witness, CW-1. But none of the nexus evidence described above came from CW-1, and Rivera does not argue that the government failed to meet the commission prong of probable cause. There was ample probable cause that Rivera committed a crime even without reliance on CW-1.
  The Court finds no need to reach the government's alternative argument that the good faith exception applies.

9

**ORDER**

Rivera's motion to suppress evidence from apartment searches (Docket No. 216) is **DENIED**.

Rivera's motion to suppress evidence from the TT 5 wiretap (Docket No. 218) is **DENIED**.

```
                          /s/ PATTI B. SARIS_____
                          Patti B. Saris
                          Chief United States District Judge
```